FILED

2004 JUN -3 AM 11: 44

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**THOMAS RENEKER,**
      Plaintiff,

vs.                                  CASE NO.: 8:04-CV-1048-T-17EAJ

**ERNIE HAIRE FORD, INC., MACDILL
SERVICE CORPORATION d/b/a MACDILL
FEDERAL CREDIT UNION, and
HOUSEHOLD AUTOMOTIVE FINANCE
CORPORATION,**
      Defendants.
_____/

## DEFENDANT, ERNIE HAIRE FORD, INC.'S
## MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT

Defendant, ERNIE HAIRE FORD, INC., (hereinafter EHF), through undersigned counsel, moves this Honorable Court to dismiss the Plaintiff's First Amended Complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P. The grounds for this motion are set forth in the following Memorandum of Law.

### MEMORANDUM OF LAW

#### I. Background

Plaintiff purchased vehicles from Defendant, EHF on two separate occasions, April 14, 2001 and December 28, 2002. The April 14, 2001 sale involved two separate contracts because of an inability to obtain financing as set forth in the first contract. The Plaintiff returned to EHF and executed a second purchase contract and retail installment sales contract (RISC) which were back dated to the sale date of April 14, 2001. Each of the three contracts at issue included a

1



third-party product described in the First Amended Complaint as "Etch insurance." According to Exhibit 2, attached to the Amended Complaint, vehicle anti-theft registration is a theft deterrent system where an identification number etched into the window of the vehicle is registered and the company guarantees payment to the owner if, within three years of the date of purchase, the vehicle is stolen and not recovered.

On or about December 22, 2003, Plaintiff filed an action in state court seeking statutory damages under the Truth In Lending Act (TILA) and Regulation Z, as well as state claims under the Florida Motor Vehicle Retail Sales Finance Act (FMVRSFA) (Florida Statutes §520.01 *et seq*) and the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) (Florida Statutes 501.201 *et seq*). A Notice of Removal was filed on May 7, 2004 pursuant to 28 U.S.C. §1446(b). This Court has jurisdiction based upon the allegations of violation of federal law under 15 U.S.C. 1601 *et seq* (TILA) and 12 C.F.R. §226 (Regulation Z). Pursuant to 28 U.S.C. 1367(a) this Court has supplemental jurisdiction over the state claims raised in the First Amended Complaint as they arise from the same transactions and operative facts as the federal claims.

Attached to the First Amended Complaint were copies of the documents at issue which included:

| | |
|---|---|
| Exhibit 1 | Purchase Contract for April 14, 2001 sale |
| Exhibit 2 | Motor Vehicle Anti-Theft Registration and Vehicle Anti-Theft Guarantee April 14, 2001 sale |
| Exhibit 3 | Customer Copy of Retail Install Sale Contract (RISC) -April 14, 2001 sale |
| Exhibit 4 | Revised Purchase Contract for April 14, 2001 sale |
| Exhibit 5 | Customer Copy of Revised Retail Sales Contract (RISC) April 14, 2001 |
| Exhibit 6 | Purchase Contract for December 28, 2002 sale |
| Exhibit 7 | Customer Copy of Retail Installment Sales Contract (RISC) for December 28, 2002 sale |
| Exhibit 8 | Silencer Security System Agreement for December 28, 2002 sale |

As demonstrated by the attachments to the First Amended Complaint, EHF has fully complied with the TILA and the FMVRSFA disclosure requirements. Therefore, Plaintiff fails to state a cause of action for which relief may be granted and the First Amended Complaint should be dismissed.

## II. Standard of Review On Motion To Dismiss

In considering a motion to dismiss, a court must view the allegations of the complaint in the light most favorable to the plaintiff which includes accepting all reasonable inferences and considering all allegations as true. *Haun v. Don Mealy Imports, Inc.*, 285 F. Supp. 2d 1297, 1301 (M.D. Fla. 2003) (internal citations omitted). Conclusory allegations and unwarranted factual deductions may not be accepted as true. *Id.* A court may consider written exhibits attached to the pleadings. *Id.* (citing Fed. R. Civ. P. 10(c) and *G.S.W., Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993)).

A complaint should not be dismissed for failure to state a cause of action unless it appears that a plaintiff can prove no set of facts entitling him to relief. *Id.* That does not mean that a court is bound to accept legal conclusions framed as factual allegations as true. *Id.* Despite the liberal standard for pleading adopted by the federal rules, bald assertions and conclusions of law are insufficient to defeat a properly supported motion to dismiss. *Id.*

## III. Required TILA Disclosures

The purpose behind the TILA was "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." *Cannon v. Metro Ford, Inc.*, 242 F. Supp.2d 1322, 1328 (S.D. Fla. 2002) (quoting 15 U.S.C. §1601). The Federal Reserve Board has promulgated

3

Regulation Z to implement the TILA under a grant of authority from Congress. *Id.* Furthermore, the Supreme Court has held that "courts must grant great deference to the official staff commentary to Regulation Z." *Bragg v. Bill Heard* Chevrolet, Inc.-Plant City, 245 F. Supp. 1235, 1237 (M.D. Fla. 2003) (citing *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 566, 100 S. Ct. 790, 63 L.Ed. 22 (1980)).

Both the TILA and Regulation Z mandate that a creditor in a closed-end credit transaction disclose: 1) the identity of the creditor; 2) the amount financed; 3) the annual percentage rate; 4) the total payments; and 5) the total sale price. 15 U.S.C. §1638(a); 12 C.F.R. §226.18. The disclosure must occur before credit is extended pursuant to 15 U.S.C. §1638(b); that is, prior to consummation as defined by Regulation Z. 12 C.F.R. §226.17(b). "Consummation" is defined as the time "the consumer becomes contractually obligated on a credit transaction." 12 C.F.R. §226.2(a)(13). The official staff commentary to §226.2(a)(13) states that the determination of whether or when a party becomes "contractually obligated" is a question of state law. *Cannon*, 242 F. Supp.2d at 1328. Regulation Z also orders that the disclosures should be made "clearly and conspicuously in writing, in a form that the consumer may keep." *Id.* (quoting 12 C.F.R. §226.17(a)(1)).

The TILA also requires that the "finance charge" on a credit transaction be disclosed. 15 U.S.C. §1683(a)(3). "Finance Charge" is defined as "the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." 15 U.S.C. 1605(a). Whether an item is included in "finance charge" is largely controlled by 12 C.F.R. §226.4.

4

### A. The December 28, 2002 Sale Is Exempt From TILA's Disclosure Requirements

Count IV alleges violations of the TILA arising from the December 28, 2002 purchase. Pursuant to 15 U.S.C. §1603(3), TILA's requirements do not apply to credit transactions not involving real property when the total amount financed exceeds $25,000.00. According to the RISC for the December 28, 2002 sale, attached to the First Amended Complaint as Exhibit 7, the total amount financed in that transaction was $35,934.46. Therefore, the December 28, 2002 transaction is exempt from TILA's disclosure requirements. Count IX alleges violation of §520.07(2)(a)-(e) of the FMVRSFA based solely upon the alleged violations of TILA and Regulation Z. Because no TILA violations occurred, Counts IV and IX fail to state a cause of action for which relief may be granted and should be dismissed.

### B. Counts I and II Are Beyond One Year From The Date Of Occurrence Of The Alleged Violations

The TILA violations alleged in Counts I and II of the Complaint are barred by the one year statute of limitations under TILA. § 15 U.S.C. §1640(e). TILA actions must be brought within one year of the date of the alleged violations. *Id. See, also, Jenkins v. Mercantile Mortgage Company*, 231 F. Supp.2d 737, 745 (N.D. Ill. 2002). The contracts attached to the Complaint reflecting the April 14, 2001 transaction are dated April 14, 2001. The Complaint alleges that the second set of documents were executed approximately 10 days after April 14, 2001, which would have been no later than April 24, 2001. The Complaint was filed on December 22, 2003, almost twenty months after the alleged violations occurred. Therefore, Counts I and II should be dismissed pursuant to 15 U.S.C. §1640(e) for failure to state a claim for which relief may be granted.

### C. The First April 14, 2001 Transaction Was Never Consummated And Is Not Subject To TILA Disclosures

The Plaintiff does not allege that he was ever obligated to Ford Motor Credit Corporation for the first April 14, 2001 transaction. Indeed, that transaction was never consummated as Ford never agreed to finance the deal. EHF, therefore, had no obligation to provide TILA disclosures prior to obtaining financing approval. *See, e.g., Bragg*, 245 F. Supp. at 1237. In *Bragg*, prospective buyers sued an auto dealership alleging violations of TILA. The court, in a motion for rehearing of the granting of a motion to dismiss, considered whether a TILA violation had occurred in transactions which had not been consummated. Heeding the Supreme Court's admonition that courts must grant great deference to the official staff commentary of Regulation Z, the court looked to the official staff commentary to Regulation Z for the definition of "consummation." *Id.* at 1238 (citing *Ford Motor Credit Co. V. Milhollin*, 444 U.S. 555, 566, 100 S. Ct. 790 (1980)).

In so doing, the court found that Florida state law, not Regulation Z determines when a consumer is obligated under a contract. *Id.* Applying Florida contract law, the court found that clauses requiring financing approval create a condition precedent to contract formation. *Id.* (citing *Huskamp Motor Co. v. Hebden*, 104 So. 2d 96, 98 (Fla. 3d DCA 1958)); *see, also Parrish v. Dougherty*, 505 So. 2d 646, 649 (Fla. 1st DCA 1987) (finding no contract existed where it was undisputed that conditions precedent had not occurred). Judge Moody concluded that because the sale was never consummated, no violation of TILA or Regulation Z had occurred and the plaintiffs could not state a claim for relief. *Id.* Following the official staff interpretation of

6

Regulation Z and Florida law as outlined in *Bragg*, all counts alleging TILA and Regulation Z violations stemming from the first April 14, 2001 transaction should be dismissed for failure to state a cause of action for which relief may be granted.

### D. The Second April 14, 2001 Transaction

The TILA and Regulation Z violations alleged in Count II reference the second contract which was backdated to 04/14/01 after financing was approved. All documents at issue were attached to the First Amended Complaint and negate the Plaintiff's allegations.

#### 1. Disclosures Under 15 U.S.C. §1638

First, Plaintiff contends that EHF failed to make accurate disclosures pursuant to 15 U.S.C. §1638(b)[1] and 12 C.F.R. 226.17[2], clearly and conspicuously in writing in a form that the

---

[1] 15 U.S.C. §1638(b) provides in pertinent part:
In conjunction with the disclosure of the amount financed, a creditor shall provide a statement of the consumer's right to obtain, upon a written request, a written itemization of the amount financed. . . . [T]he creditor shall provide, at the time other disclosures are required to be furnished, a written itemization of the amount financed. For purposes of this subparagraph, "itemization of the amount financed" means a disclosure of the following items, to the extent applicable:
* * * *
(iii) each amount that is or will be paid to third persons by the creditor on the consumer's behalf, together with an identification of reference to the third person;

[2] 12C.F.R. 226.17 provides in pertinent part:
(a) Form of disclosures.
(1) The creditor shall make the disclosures required by this subpart clearly and conspicuously in writing, in a form that the consumer may keep. The disclosures shall be grouped together, shall be segregated from everything else, and shall not contain any information not directly related [FN37] to the disclosures required under §226.18. [FN38]. The itemization of amount financed under §226.18(c)(1)must be separate from the other disclosures under that section.
* * * *
[FN38] The following disclosures may be made together with or separately from other required disclosures: . . . insurance or debt cancellation under §226.18(n).
* * * *

7

consumer may keep prior to the consummation of the transactions (Comp. ¶32a.) The Plaintiff has failed to specify exactly what he alleges was inaccurate, omitted or improperly disclosed.

Exhibits 2, 4 and 5, attached to the First Amended Complaint, represent the second April 14, 2001 contract. These documents contain the identity of the creditor, the amount financed, the annual percentage rate, the total payments, the total sale price and the total finance charge, In addition, the Motor Vehicle Anti Theft Registration detailed the terms and conditions of the coverage and the name of the party providing the coverage. Each document was signed by the Plaintiff and dated.

At no time has the Plaintiff challenged the authenticity of his signature or alleged that he was in any way fraudulently induced to sign the documents. Directly above the Plaintiff's signature on the RISC is an acknowledgment that the Plaintiff received a completely filled in copy of the contract prior to signing it. Moreover, the Plaintiff signed both the purchase agreement, disclosing the purchase of vehicle theft registration, and the Motor Vehicle Anti Theft Registration which detailed the terms and conditions of the coverage. Thus, the documents attached to the First Amended Complaint negate the allegations of paragraph 32(a) for the second April 14, 2001 transaction.

### 2. "Etch Insurance" Disclosures

Paragraphs 32(b), (c) and (e) of the First Amended Complaint appear to pertain to the

---

(b) Time of disclosures. The creditor shall make disclosures before consummation of the transaction.
* * * *

8

"Etch insurance,[3]" the disclosures required by TILA and Regulation Z in order to properly exclude that amount from finance charge and the mandatory disclosures related to third-party products. TILA requires that property damage or liability insurance premiums be included in finance charge unless "a clear and specific statement in writing be furnished by the creditor to the person to whom credit is extended, setting forth the cost of the insurance if obtained from the creditor, and stating that the person to whom the credit is extended may choose the person through which the insurance is to be obtained." 15 U.S.C. §1605(c). Regulation Z imposes several other requirements before the charge may be excluded from finance charge. Section 226.4(d)(2) provides:

> Premiums for insurance against loss of or damage to property, or against liability arising out of the ownership or use of property, may be excluded from the finance charge if the following conditions are met:
> (i) The insurance coverage may be obtained from a person of the consumer's choice, and this fact is disclosed.
> (ii) If the coverage is obtained from or through the creditor, the premium for the initial term of insurance coverage shall be disclosed. If the term of insurance is less than the term of the transaction, the term of the insurance shall also be disclosed. . . .

Amounts included in the amount financed which are paid to third parties by the creditor on behalf of the consumer must also be disclosed as well as the identity of those third parties. 15 U.S. C. §1638(a)(2)(B)(iii); 12 C.F.R. 226.18(c)(1) (iii) [4].

Here, the charge for the Vehicle Theft Registration was disclosed on the purchase

---

[3] For the purposes of this motion to dismiss only, EHF does not contest that the vehicle theft registration is "insurance" as described in 15 U.S.C. 1605(c), subject to inclusion in finance charge subject to the exclusion of 12 C.F.R. 226.4(d)(2).

[4] Insurance companies may be described using generic or other general terms and need not be further identified. 226.18(c)(1) (iii) at n. 41.

9

agreement (Exhibit 4). The amount was included in the Cash Price and not in the Finance Charge. As required by 15 U.S.C. §1605(c) and 12 C.F.R. 226.4(d)(2), to exempt this charge from inclusion in the finance charge, the following disclosures were made to the purchaser: 1) the term of the coverage and effective dates were disclosed on the Motor Vehicle Anti-Theft Registration document which also included the company name and address; 2) the RISC contained notices that advised that no insurance other than physical damage insurance was necessary and that the choice of insurance provider would not affect the transaction[5]. The Plaintiff, as purchaser, signed all three documents. Thus, EHF made all required TILA disclosures with regard to the Vehicle Theft Registration or "Etch insurance." Consequently, paragraphs 32(b), (c) and (e) fail to state a cause of action for which relief may be granted.

### 3. Estimate Disclosures

Finally, in paragraph 32(d), the Plaintiff asserts that EHF failed to clearly state its disclosures were "estimates" in accordance with 15 U.S.C. §§1601 and 1638 and Regulation Z, 12 C.F.R. §226.17(c)(2). This contract contained a financing contingency as a condition precedent to consummation of the sale[6]. The Plaintiff appears to believe that the figures and APR included on the RISC should have been disclosed as estimates because at the time the document

---

[5] "Insurance. You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit. Your choice of insurance providers will not affect our decision to sell or extend credit to you."

[6] The purchase contract states: "This order shall not become binding until accepted by the dealer or his authorized representative and in the event of a time sale, dealer shall not be obligated to sell vehicle until approval of the terms hereof is given by a bank or finance company willing to purchase a retail installment contract between the parties hereto based on such terms."( Exhibit 4).

was completed it was unknown whether or not the sale would be consummated as written.

The Plaintiff's contention fails for two reasons. First, if the contract was consummated as written, the figures and APR were timely and accurate as disclosed and there was no violation. On the other hand, if the contract was not accepted by a financial institution, there was no sale and thus no disclosure requirement. Either the parties acknowledge the contract is void and are returned to status quo ante or they execute a new set of documents reflecting a new contract, as is the case here, with terms acceptable to the financial institution and the parties. The new transaction is fully disclosed prior to consummation as required by TILA and Regulation Z. In neither case are the figures estimates. Rather, the figures accurately reflect the terms of the contract envisioned by the parties at the time the agreement is formed. That is all that TILA requires[7]. Thus, paragraph 32(d) fails to state a cause of action for which relief may be granted.

### IV. Florida Motor Vehicle Retail Sales Finance Act

Several of the counts under the FMVRSFA are based solely on the violation of TILA and Regulation Z. Based upon the foregoing, those counts fail to state a cause of action for which relief may be granted[8]. The other FMVRSFA counts can be grouped under two types: 1) failure

---

[7] 12 C.F.R. 226.17  Basis of Disclosures and use of estimates.
\* \* \* \*
(e) Effect of subsequent events. If a disclosure becomes inaccurate because of an event that occurs after the creditor delivers the required disclosures, the inaccuracy is not a violation of this regulation, although new disclosures may be required under paragraph (f) of this section, §226.19, or §226.20.
(f) Early disclosures. If disclosures required by this subpart are given before the date of consummation of a transaction and a subsequent event makes them inaccurate, the creditor shall disclose before consummation.

[8] Those counts are brought under §520.07(2)(a)-(e) and include Counts VI, VII, VIII (derivative claim), IX, and X (derivative claim).

11

to provide a written itemization of amount financed pursuant to §520.07(3)(d), F.S., and 2) having the plaintiff sign a contract that contained blank spaces in violation of §520.07(1)(a) and (7), F.S.

Specifically, Counts XI, XII and XIV allege that EHF failed to comply with F.S. §520.07(3)(d) which requires that a seller provide a written itemization of the amount financed including the amounts, if any, included for insurance and other benefits, specifying the types of coverages and benefits. Attached to the First Amended Complaint are Exhibits 3, 5 and 7 which are the RISCs for the respective transactions. On each, the box showing "Itemization of Amount Financed" lists amounts payable for Credit Life Insurance, Credit Disability Insurance, GAP insurance and a service contract. Silencer is included on the 12/28/02 contract (Exhibit 7). In addition, the purchase contracts[9] itemize the amounts payable for Silencer and Vehicle Theft Registration. Thus, EHF complied with the disclosure requirements of §520.07(3)(d) and Counts XI, XII and XIV should be dismissed for failure to state a claim for which relief may be granted.

Counts XVI, XVII and XVIII allege that EHF violated §520.07(1)(a) and (7), Florida Statutes, by having the plaintiff sign a contract that contained blank spaces. Subsection (1)(a) provides: "A retail installment contract shall be in writing, shall be signed by both the buyer and the seller and shall be completed to all essential provisions prior to the signing of the contract by the buyer." Subsection (7) adds: "No retail installment contract shall be signed by any party when it contains blank spaces to be filled in after it has been signed . . . . The **buyers written**

---

[9] The itemization may appear on a disclosure statement separate from other material of it may be placed on the same document with the contract or other information. §502.07(3), F.S.

12

**acknowledgment, conforming to the requirements of paragraph (1)(c)[10], of delivery of a copy of a contract shall be presumptive proof of such delivery, that the contract when signed did not contain any blank spaces except as herein provided, and of compliance with this section in any action or proceeding by or against the holder of the contract.**" (Emphasis added).

Above the signature block on Exhibits 3, 5 and 7, appears the following notice: "NOTICE TO THE BUYER: a) Do not sign this contract before you read it or if it contains any blank spaces. 2) You are entitled to an exact copy of the contract you sign. Keep it to protect your legal rights." Directly above the buyer's signature line is the following statement: "You agree to the terms of this contract and confirm that you received a completely filled in copy when you signed it." The Plaintiff's signature appears just below. The Plaintiff acknowledged that the contract did not contain any blank spaces when he signed it and that he received a copy. Indeed, his copy was attached to the First Amended Complaint. Thus, Counts XVI, XVII and XVIII fail to state a cause of action for which relief may be granted and should be dismissed.

### V. Florida Deceptive And Unfair Trade Practices Act

Count XIX seeks damages for a violation of Florida Statutes section 501.201 *et seq.* (FDUTPA) based solely on the violation of the state and federal statutes alleged in Counts 1-XVIII. Because none of the foregoing counts on which it is based state a cause for which relief may be granted, Count XIX must be dismissed.

---

[10] Paragraph (1)(c) requires that "[b]efore the transaction is consummated, a copy of the retail installment contract . . . shall be delivered to the buyer. . . . Any acknowledgment by the buyer of delivery of a copy of the contract, if contained in the contract, shall appear directly above or adjacent to the buyer's signature." §520.07(1)(c), F.S.

13

WHEREFORE, Defendant, ERNIE HAIRE FORD, INC., respectfully requests this Honorable Court to dismiss Counts I, II, IV, VI, VII, IX, XI, XII, XIV, XVI, XVII, XVIII and XIX of the First Amended Complaint for failure to state a cause of action for which relief may be granted and any other relief the Court deems just and proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was furnished by regular U. S. Mail to **J. Daniel Clark, Esq.,** Clark, Charlton & Martino, P.A., 3407 W. Kennedy Blvd., Tampa, Florida 33609, **David B. Weinstein, Esq.** and **Geoffrey E. Parmer, Esq.**, Bales Weinstein, P.A., 625 E. Twiggs Street, Suite 100, Tampa, FL 33602 this 2nd day of June, 2004.

*/s/ Michael D. Siegel*
**Michael D. Siegel, Esq.**
Fla. Bar No.: 436860
**Cate MacGlashan, Esq.**
Fla. Bar No.: 0087998
DELCAMP & SIEGEL
P. O. Box 11267
St. Petersburg, Fl. 33733
(727) 896-4488\FAX: 895-4488
Attorney for Ernie Haire Ford, Inc.

# DOCUMENT, ATTACHMENTS, OR EXHIBITS NOT SCANNED

## FOR THE FOLLOWING REASON(S):

- \_\_\_ **PHYSICAL SIZE OF PAPER** (LARGER OR SMALLER THAN 8 ½ X 11)
- \_\_\_ **EXCEEDS PAGE LIMIT**
- \_\_\_ **DOUBLE-SIDED PAGES**
- \_\_\_ **BINDING CANNOT BE REMOVED WITHOUT DAMAGING DOCUMENT**
- _X_ **CASE LAW**
- \_\_\_ **SOCIAL SECURITY RECORD/ANSWER**
- \_\_\_ **DEPOSITION/TRANSCRIPT**
- \_\_\_ **NON-REMOVABLE EXHIBIT TABS**
- \_\_\_ **COLORED PAPER OR COPIED PHOTOGRAPHS**
- \_\_\_ **SEALED**
- \_\_\_ **OTHER** _____

# PLEASE REFER TO COURT FILE FOR COMPLETE DOCUMENT